UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HERBERT A. SAFFELL, | ) |
| Plaintiff, | ) |
| | ) No. 4:19-CV-00202 JAR |
| v. | ) |
| MARK WILSON, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. No. 28). Plaintiff Herbert A. Saffell ("Plaintiff"), proceeding *pro se*, brings this action for failure to protect pursuant to 42 U.S.C. § 1983 against Correctional Officer Mark Wilson ("Wilson"), Caseworker Linda Francis ("Francis"), and Functional Unit Manager Theodore Eaton ("Eaton") (collectively "Defendants"), in their individual capacities.[1] (Prisoner Civil Rights Complaint Under 42 U.S.C. § 1983 ("Compl."), Doc. No. 1). His claim arises from an assault by his cellmate that occurred in August 2017 while confined at the Eastern Reception and Diagnostic Center ("ERDCC") in Bonne Terre, Missouri.[2]

---

[1] On May 13, 2019, the Court dismissed Plaintiff's claims against Defendants Unknown Hendricks and John Doe Correctional Officer without prejudice, and directed process to issue on Defendants Correctional Officer Unknown Wilson, Bubble Officer Unknown Liggett, Unknown Functional Unit Manager Housing 6 in July 2016, and Caseworker Frances Unknown in their individual capacities as to Plaintiff's claims for failure to protect. (Doc. No. 7). To date, there has been no service or entry of appearance for Defendant "Unknown Liggett." (Doc No. 12).

[2] Plaintiff brought a prior action in this Court alleging violations of his civil rights relative to the August 2017 assault. See Saffell v. Precythe, No. 4:18CV1504 HEA (E.D. Mo. 2018). There, he asserted that defendants Anne Precythe, Director of the MDOC, as well as Stanley Payne, Warden at ERDCC, were responsible for violations of his constitutional rights relative to Hubbard's attack. (Doc. No. 1). The matter was dismissed on 28 U.S.C. § 1915 review on October 30, 2018. (Doc. No. 7).

1

On May 14, 2020, this Court granted Plaintiff until June 15, 2020 to respond to Defendants' motion for summary judgment and cautioned him that failure to do so would result in the Court ruling on Defendant's unopposed motion. (Doc. No. 29). Plaintiff did not respond, but filed a letter with the Court on May 26, 2020, indicating that he did not understand the Court's order. (Doc. No. 30). The Court's order could not be clearer: respond to Defendants' motion by June 15, 2020 or the Court will rule on the unopposed motion. There can be no confusion as to this directive. Plaintiff received the order and has filed nothing. Accordingly, the motion is unopposed and ready for disposition.

**Background**

According to the complaint, in June 2017, Plaintiff was assigned to a cell with another offender, Derrick Hubbard ("Hubbard"), who had a "notorious reputation with staff and inmates alike for violently assaulting and attempting to kill his roommate, as well as for assaulting staff members throughout his tenure in the MDOC." (Compl. at ¶¶ 2, 4). Thereafter, Hubbard began threatening Plaintiff with bodily harm. (Id. at ¶ 5). Between July 13, 2017 and July 20, 2017, Plaintiff complained to various MDOC officials, including Defendants, that he was being assaulted, abused and threatened by Hubbard, all of whom allegedly "turned a blind eye" to his requests to either be moved to a new cell or placed in protective custody. (Id. at ¶¶ 6, 7, 15, 16, 18-20). On August 3 or 4, 2017, Hubbard attacked Plaintiff in his cell and beat him with his own wooden cane. (Id. at ¶ 29). Plaintiff alleges Defendants were deliberately indifferent to a substantial risk of serious harm because they did not change his cell or cellmate assignment despite their awareness that Hubbard had a history of violence against other inmates. Plaintiff seeks compensatory and punitive damages for ongoing physical and mental damage due to the assault.

Defendants move for summary judgment on the following grounds: (1) Defendants were not deliberately indifferent to Plaintiff's safety; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff failed to exhaust his available administrative remedies. (Doc. No. 28).

**Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). Self-serving, conclusory statements without support are insufficient to defeat summary judgment. Armour & Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

Plaintiff has not provided a statement of material facts as to which he contends a genuine issue exists at all, nor one that properly conforms to the requirements of the Local Rules and the Federal Rules of Civil Procedure. Plaintiff's status as a *pro se* prisoner does not excuse him from responding to Defendants' motion "with specific factual support for his claims to avoid summary judgment," or from complying with local rules. Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001). With his failure to respond, Plaintiff is deemed to have admitted each fact in Defendants' Statement of Uncontroverted Facts ("SOF") (Doc. No. 28-2) for purposes of the pending motion

for summary judgment. Turner v. Shinseki, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010) (citing Deichmann v. Boeing Co., 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999), *aff'd* 232 F.3d 907 (8th Cir. 2000), *cert. denied*, 531 U.S. 877)).

However, Plaintiff's failure to respond properly to Defendants' motion does not mean summary judgment should be automatically granted in favor of Defendants. Even if the facts as alleged by Defendants are not in dispute, those facts still must establish they are entitled to judgment as a matter of law. Cross v. MHM Corr. Servs., Inc., No. 4:11-CV-1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

**Discussion**

**(1) Defendants were not deliberately indifferent to Plaintiff's safety**

The Eighth Amendment requires prison officials to "'provide humane conditions of confinement' by taking reasonable steps to protect inmates convicted of crimes from assault by other inmates." Schoelch v. Mitchell, 625 F.3d 1041, 1046 (8th Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)); see also Holden v. Hirner, 663 F.3d 336, 340-41 (8th Cir. 2011).

To prove unconstitutional failure to protect from harm, Plaintiff must satisfy a two-prong test. First, he must show that he was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. This prong is viewed objectively. Id. Second, Plaintiff must prove that Defendants acted with deliberate indifference to the substantial risk of serious harm. Id. This second requirement is subjective. Id. at 837-38. To be found deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Deliberate indifference is "something more than negligence but less than actual intent to harm";

4

it "requires proof of a reckless disregard of the known risk." Holden, 663 F.3d at 341 (quotation marks omitted). Whether a risk was known to the defendant must be considered from the defendant's perspective at the time in question, "not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998) (citing Williams v. Nebraska State Penitentiary, 57 F.3d 667, 669 (8th Cir. 1995)). Some of the factors relevant to assessing a defendant's subjective awareness of a substantial risk of serious harm include whether the defendant knew about threats against the plaintiff; whether the plaintiff reported to the defendants that he felt in danger or wanted protection; whether the plaintiff's assailant had a known propensity for violent behavior; and whether the defendants were aware of a history of adverse interactions between the plaintiff and his assailant. See generally Pagels v. Morrison, 335 F.3d 736, 740-41 (8th Cir. 2003); Schoelch, 625 F.3d at 1047-48.

The Court assumes without deciding that Plaintiff's incarceration with Hubbard resulted in a substantial risk of harm, and thus that Plaintiff could establish the objective prong of the failure-to-protect inquiry. Nevertheless, even if there was a substantial risk of harm to Plaintiff, Defendants are entitled to summary judgment based on the second prong because there is no evidence Defendants were deliberately indifferent to that risk. Tucker v. Evans, 276 F.3d 999, 1001 (8th Cir. 2002); Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996); see also Hymes v. Warren, No. 4:14-CV-000485-SPM, 2016 WL 160642, at *3-4 (E.D. Mo. Jan. 14, 2016).

Plaintiff never reported to any of the Defendants that he felt he was in physical danger or that he wanted to be placed in protective custody. (SUF at ¶ 4). To the contrary, Plaintiff admitted that Hubbard had never put his hands on Plaintiff prior to the assault. (SOF at ¶¶ 2-3). He told Wilson that Hubbard's threats were "just verbal," and that Hubbard "didn't put his hands on me and I don't think he's going to put his hands on me." (SOF at ¶ 19). Plaintiff characterized

Hubbard's threats as "just, you know, one man to another just running off at the mouth." (SOF at ¶ 20). Plaintiff complained to Francis and Eaton that he and Hubbard did not like each other and were not getting along, that Hubbard was "bullying him around," and that he "needed to get out of that room." (SOF at ¶¶ 22, 25, 29). An inmate's general statements that he is not getting along with and is being harassed and threatened by other inmates does not, however, establish actual knowledge of a substantial risk of harm. See Prater, 89 F.3d at 541-42 ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."); Baker v. Pettis Cty. Jail, No. 06-4092-CV-C-NKL, 2007 WL 4289693, at *7 (W.D. Mo. Nov. 28, 2007) ("[T]he reality is that inmates in a jail don't always get along, and therefore, generalized statements by an inmate, over a period of less than a week, that he is not getting along with other inmates, fail to allege sufficient knowledge of a risk of serious harm.").

Moreover, during his first conversation with Plaintiff, Wilson asked Plaintiff whether he wanted something done about Hubbard's threats (SOF at ¶ 18), and, according to Plaintiff's complaint, offered to provide him with the paperwork to effect a cell reassignment, all of which is contrary to his claim that Defendants were deliberately indifferent to his complaints. Plaintiff declined Wilson's offer of assistance telling Wilson he wanted to "overlook" Hubbard's threats. (SOF at ¶ 17). Nevertheless, Wilson referred Plaintiff to the floor officer for Plaintiff's cell wing, Officer Liggett. (SOF at ¶ 21). Similarly, Francis provided Plaintiff with housing forms to effect a cell reassignment. (SOF at ¶ 23).

It is also significant that at the same time Plaintiff was requesting reassignment due to his issues with Hubbard, he had also requested to be moved based on his temporary use of a wheelchair. (SOF at ¶ 15). Plaintiff testified at his deposition that other inmates had told him he

6

had not been at the facility long enough to be moved based on his use of a wheelchair, but that it would be possible to be moved if he could prove he was being threatened. (SOF at ¶ 16). Further, Plaintiff and Hubbard went together to speak with Francis and others about changing their cell assignment, because they did not like each other and were not getting along. (SOF at ¶¶ 23, 26, 29). This information would reasonably have caused Defendants to be skeptical of Plaintiff's reasons for requesting a move.

There is also no evidence that any of the Defendants were aware of any history between Plaintiff and Hubbard that might have suggested a motivation for the attack or that Hubbard had a propensity for violent behavior. As support for his allegations, Plaintiff relies on the threats Hubbard made to him. Yet Plaintiff does not dispute the fact that, despite the threats, he and Hubbard were cellmates for two weeks without incident. Plaintiff does not allege that he and Hubbard had any history of conflict, either before they were cellmates or at any time during the two weeks they were cellmates before the assault. To the contrary, Plaintiff and Hubbard worked together to request a change in cell assignments. (SOF at ¶ 23).

As further support for his allegations, Plaintiff relies on a letter purportedly written by an inmate named Dan Chapman to Chapman's daughter and an unnamed warden or assistant warden (SOF at ¶ 5). Chapman indicated in the letter that while he and Hubbard were cellmates, Hubbard had threatened to beat Chapman and mentioned beating a prior cellmate. (SOF at ¶¶ 7, 9, 11). Nothing in the letter references any act of physical violence witnessed by Chapman and Chapman did not witness any interactions between Plaintiff and Hubbard, having only met Plaintiff in September 2017, after the assault. (SOF at ¶¶ 8, 10). Indeed, Chapman qualifies his statement by stating "I have no way of knowing if the things Hubbard has told me are true …" (SOF at ¶ 12). Hearsay, defined in Fed. R. Evid. 801(c) as "a statement, other than one made by

7

the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," may not be used to defeat a summary judgment motion. Jenkins v. Winter, 540 F.3d 742, 748 (8th Cir. 2008); McNeil v. Metro, 748 F. Supp. 2d 1047, 1054 (E.D. Mo. 2010). Furthermore, because this letter came to light after the assault, there is no evidence that any Defendants were even aware of it before the assault. Whether a risk was known to a defendant must be considered from the defendant's perspective at the time in question. Jackson, 140 F.3d at 1152.

In sum, even when the facts are viewed in the light most favorable to Plaintiff, there is insufficient evidence from which a reasonable jury could find that Defendants Wilson, Francis, or Eaton were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, or that they drew such an inference. Therefore, there are no genuine issues of material fact as to whether these Defendants violated Plaintiff's Eighth Amendment rights by failing to protect him, and these defendants are entitled to summary judgment.

**(2) Qualified immunity**

Defendants further argue they are entitled to summary judgment based on qualified immunity because Plaintiff has failed to show that Defendants' conduct amounted to a reckless disregard of a substantial risk of serious harm. (Doc. No. 28-1 at 12-13). An official sued under section 1983 is entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation. Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)). Courts are "permitted to exercise their sound discretion in deciding which

of the two prongs of the qualified immunity analysis should be addressed first." Kulkay v. Roy, 847 F.3d 637, 642 (8th Cir. 2017) (quoting Pearson, 555 U.S. at 236). Because an official is entitled to qualified immunity unless both prongs are satisfied, the analysis ends if either of the two is not met. See id.

As discussed above, the Court has found that the facts, even when viewed in the light most favorable to Plaintiff, do not establish a plausible claim for an Eighth Amendment violation because Plaintiff has not shown a substantial risk of serious harm that Defendants knew of but were deliberately indifferent to. If no constitutional violation occurred, the evaluation ends there. Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case."). The Court need not proceed to the second prong of the qualified immunity analysis to determine whether the alleged constitutional violation was also clearly established at the time in question. See Kulkay, 847 F.3d at 645–46 (citing Ransom v. Grisafe, 790 F.3d 804, 812 n.4 (8th Cir. 2015)); Fields v. Abbott, 652 F.3d 886, 894 (8th Cir. 2011)). Defendants are therefore entitled to qualified immunity on Plaintiff's failure to protect claim.

**(3) Exhaustion of administrative remedies**

Because Defendants are entitled to summary judgment on the merits, the Court need not address the argument that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). (Doc. No. 28-1 at 13).

**Conclusion**

The evidence before the Court, including Plaintiff's verified complaint and deposition testimony, shows that Defendants' alleged conduct did not amount to constitutional violations,

and no genuine issue of material fact exists for trial. Accordingly, both under the standards for qualified immunity and on the merits, Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [28] is **GRANTED.**

A separate Judgment will accompany this Memorandum and Order.

Dated this 28th day of December, 2020.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**